**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION**

**HENRY LAVELL MADISON**                                                              **PLAINTIFF**

**v.**                                                    **CIVIL ACTION NO. 5:13-cv-223-MTP**

**PATSY WILEY and DR. JAMES BURKE**                                        **DEFENDANTS**

**OPINION AND ORDER**

THIS MATTER is before the Court on Defendants' Motion for Summary Judgment [54]. Having considered the Motion [54], the record, and the applicable law, the Court finds that the Motion [54] should be granted and that this action should be dismissed with prejudice.

**BACKGROUND**

On November 14, 2013, Plaintiff Henry Lavell Madison, proceeding *pro se* and *in forma pauperis*, filed his complaint pursuant to 42 U.S.C. § 1983. The allegations in Plaintiff's complaint occurred while he was a post-conviction inmate at Wilkinson County Correctional Facility ("WCCF").[1] In his complaint and as clarified in his testimony at the *Spears*[2] hearing, Plaintiff asserts claims against Patsy Wiley and Dr. James Burke for the denial of adequate medical care.[3]

According to Plaintiff, he suffers from a nerve condition in his neck and spine, and beginning in May, 2013, he was prescribed a muscle relaxer and regular injections of pain

---

[1] Plaintiff is currently incarcerated at East Mississippi Correctional Facility.

[2] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

[3] Plaintiff also named WCCF, Archie Longley, Jessica Jackson, Evelyn Dunn, Dr. Anderson, and Crystal Bitz as defendants, but these defendants were previously dismissed from this action. *See* Orders [23] [45] [58].

1

medications to treat his illness.  Allegedly, Plaintiff was romantically involved with Defendant Wiley, a nurse at WCCF.  Plaintiff alleges that after he ended this romantic relationship, Wiley intentionally prevented him from receiving his medications, ignored his sick calls, and prevented him from seeing a doctor.

Plaintiff also alleges that Wiley influenced other medical personnel at WCCF to deny him medical care.  Plaintiff alleges that Defendant Dr. Burke began treating him less effectively after Wiley spoke to Dr. Burke.  Specifically, Plaintiff alleges that Dr. Burke delayed ordering him an MRI, which was required to show whether spinal surgery was necessary.

According to Plaintiff, Defendants' denial and/or delay in medical care caused him severe pain, worsened his nerve condition, and necessitated a surgery in February, 2014.  As relief, Plaintiff seeks injunctive relief in the form of an order directing that Wiley and Dr. Burke be removed from their positions at WCCF, along with monetary damages.  Following a *Spears* hearing, during which Plaintiff clarified his claims and the Court ordered certain discovery, Defendants filed their Motion for Summary Judgment [54].  On June 9, 2015, the Court granted Plaintiff an extension of time to file a response to the Motion [54], but Plaintiff failed to file a response. *See* Order [57].

## STANDARD FOR SUMMARY JUDGMENT

A motion for summary judgment will be granted only when "the record indicates that there is 'no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (citing Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  The Court must view "the evidence in the light most favorable to the nonmoving party." *Id.*

However, the nonmoving party "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).  In the absence of proof, the Court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

## ANALYSIS

As an initial matter, Defendants argue that Plaintiff failed to exhaust his administrative remedies.  The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires prisoners to exhaust any available administrative remedies prior to filing suit under 42 U.S.C. § 1983.  The Fifth Circuit takes "a strict approach" to the PLRA's exhaustion requirement. *Johnson v. Ford*, 261 Fed. App'x 752, 755 (5th Cir. 2008) (citing *Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003)).  A prisoner cannot satisfy the exhaustion requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal" because "proper exhaustion of administrative remedies is necessary."  *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006).  It is not enough to merely initiate the grievance process or to put prison officials on notice of a complaint; the grievance process must be carried through to its conclusion. *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001).

Mississippi Code § 47-5-801 grants the Mississippi Department of Corrections ("MDOC") the authority to adopt an administrative review procedure at each of its correctional facilities.  Pursuant to this statutory authority, the MDOC has set up an Administrative Remedy Program ("ARP") through which an inmate may seek formal review of a complaint relating to

3

any aspect of his incarceration. *See* MISSISSIPPI DEPARTMENT OF CORRECTIONS HANDBOOK[4] at Ch. VIII. The ARP is a two-step process.[5]

In his Complaint [1], Plaintiff states that he did not complete the Administrative Remedy Program because his grievance involved sensitive issues. However, even if Plaintiff's grievance involved sensitive issues, such would not constitute a valid reason for his failure to complete the ARP process. MDOC policy provides that "[i]f the inmate believes that the complaint is sensitive and that they would be adversely affected if the complaint became known at the institution or facility, they may file the complaint directly to the Deputy Commissioner, and the inmate must explain, in writing, the reason for not filing the complaint at the institution/facility." *See* MISSISSIPPI DEPARTMENT OF CORRECTIONS HANDBOOK at Ch. VIII. Plaintiff has not alleged, or presented any evidence demonstrating, that he utilized this procedure.[6] Because Plaintiff failed to complete the steps of the ARP, Defendants' Motion for Summary Judgment [54] should be granted.

Nevertheless, the Court further finds that Defendants are entitled to summary judgment on the merits of Plaintiff's claims. As discussed below, Plaintiff's claims against Defendants should be dismissed with prejudice.

---

[4] *See* http://www.mdoc.ms.gov/Inmate-Info/Pages/Inmate-Handbook.aspx. (Last visited January 20, 2016).

[5] Effective September 19, 2010, the ARP was changed from a three-step process to a two-step process. *See Threadgill v. Moore*, 2011 WL 4388832, at *3 n.6 (S.D. Miss. July 25, 2011).

[6] During the *Spears* hearing, Plaintiff stated that he submitted an ARP grievance. (Transcript [54-1] at 48.) However, Defendants produced Plaintiff's ARP file which demonstrates that Plaintiff did not submit a grievance. (ARP File [54-3].) Additionally, Plaintiff has failed to come forward with any evidence demonstrating that he submitted an ARP grievance or that he completed the ARP process.

Plaintiff's allegations amount to claims against Defendants for violations of the Eighth Amendment. "Prison officials violate the constitutional proscription against cruel and unusual punishment when they are deliberately indifferent to a prisoner's serious medical needs, as doing so constitutes unnecessary and wanton infliction of pain." *Davidson v. Texas Dep't of Criminal Justice*, 91 Fed. App'x 963, 964 (5th Cir. 2004) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). Deliberate indifference "is an extremely high standard to meet." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)). The test for establishing deliberate indifference is "one of subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A plaintiff must show that a defendant's "response indicate[d] that the [defendant] subjectively intended that harm occur." *Thompson v. Upshur County*, 245 F.3d 447, 458-59 (5th Cir. 2001).

An official is not deliberately indifferent unless he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Id*. at 838. Plaintiff must "submit evidence that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any other similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Davidson*, 91 Fed. App'x at 965 (quoting *Domino*, 239 F.3d at 756). "[D]elay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm." *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

Negligent conduct by prison officials does not rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 333-34 (1986). Plaintiff is not entitled to the "best"

medical treatment available. *McMahon v. Beard*, 583 F.2d 172, 174 (5th Cir. 1978); *Irby v. Cole*, 2006 WL 2827551, at *7 (S.D. Miss. Sept. 25, 2006). Further, a prisoner's "disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs." *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 2001).

In support of their Motion for Summary Judgment [54], Defendants submitted a transcript of the *Spears* hearing and Plaintiff's medical records. Plaintiff's medical records demonstrate that on May 6, 2013, Nurse Practitioner Burkhalter treated Plaintiff regarding complaints of left neck, chest, and shoulder pain and numbness in his right leg. Plaintiff explained that a week prior, he was exercising before the pain began. Burkhalter prescribed Plaintiff an NSAID pain medication, a muscle relaxant, and a steroid. Burkhalter also ordered radiographs of the lumbar region of Plaintiff's spine. (Medical Records [54-2] at 1-2.) The next day, Burkhalter performed a follow-up examination on Plaintiff and prescribed an additional NSAID. ([54-2] at 4-5.)

On May 17, 2013, Buckhalter performed another follow-up examination on Plaintiff and noted that Plaintiff's spinal radiographs were normal. Buckhalter ordered radiographs of Plaintiff's cervical spine and noted that after radiographs were taken she might order an MRI. ([54-2] at 6-7.) On June 14, 2013, Buckhalter examined Plaintiff and noted that Plaintiff's radiograph showed degenerative disc disease in his spine. Buckhalter prescribed an additional pain medication and muscle relaxant. ([54-2] at 8-9.) On June 24, 2013, a doctor evaluated Plaintiff, prescribed him a steroid, and ordered laboratory testing, the results of which were received on July 16, 2013. ([54-2] at 10-13; 86-88.) On July 29, 2013, Nurse Practitioner Carr examined Plaintiff regarding complaints of a burning sensation on the right side of his body.

Carr prescribed Plaintiff two pain medications and a muscle relaxant. ([54-2] at 14-16.)

Later on July 29, 2013, a mental health professional examined Plaintiff after he stated that he was suicidal and had taken "some pills." Plaintiff was placed under suicide observation, and he would remain under observation until October 12, 2013. ([54-2] at 17-18; 52.) On August 3, 2013, Plaintiff complained to a mental health professional about his spinal issues, as well as other medical issues. The mental health professional noted that Plaintiff was showing symptoms of "increased paranoia."[7] ([54-2] at 22.) Plaintiff's records also indicate that he has a history of "severe mental illness." ([54-2] at 33.)

On September 14, 2013, Nurse Practitioner Carr examined Plaintiff regarding complaints of neck pain and prescribed him a medication for nerve pain. ([54-2] at 36, 38.) On September 23, 2013, Defendant Dr. James Burke examined Plaintiff, who stated that the "[w]eakness has improved but now when neck is extended has pain shooting down right arm . . . ." Dr. Burke noted that the medical history and his exam are consistent with a lower cervical spine disc protrusion which appeared to be improved from the time of the injury. Dr. Burke indicated that he planned to request an MRI. ([54-2] at 42.) On October 2, 2013, Dr. Burke examined Plaintiff, noted that he had requested an MRI for Plaintiff, and prescribed him two steroids, an NSAID pain medication, and a muscle relaxant. ([54-2] at 47.) On October 4, 2013, Nurse Practitioner Nita McCann examined Plaintiff regarding complaints of mild back pain. McCann provided Plaintiff ibuprofen and recommended cool compresses, moist heat, and gentle strengthening exercises. ([54-2] at 49.)

---

[7] The mental health professional noted that Plaintiff stated that the staff, nurses, and other inmates were trying to kill him and that the staff and nurses were refusing to give him his pain medication.

On October 16, 2013, Dr. Reddix requested that Dr. Burke reevaluate Plaintiff's physical exam before sending Plaintiff for an MRI. ([54-2] at 53.)  On November 7, 2013, Dr. Burke examined Plaintiff and again determined that he would request an MRI. ([54-2] at 55.)  On November 26, 2013, Dr. Burke examined Plaintiff and noted that an MRI had been approved for Plaintiff. ([54-2] at 57.)  On November 29, 2013, Plaintiff refused to allow medical professionals to perform laboratory testing. ([54-2] at 60-61.)

On December 8, 2013, Plaintiff fell as he was getting down from his bunk and was taken to the medical department.  Plaintiff, however, suffered no injuries and was returned to his cell. ([54-2] at 62-63.)  On December 9, 2013, Dr. Burke noted Plaintiff's fall and determined that he would reevaluate Plaintiff after receiving the MRI results. ([54-2] at 69.)  On December 12, 2013, Plaintiff was taken to a radiology clinic for an MRI, which revealed "[a]dvanced spondylosis with posterior disc herniations at C2-C3 through C5-C6. ([54-2] at 73; 92-93.)  On December 16, 2013, Plaintiff was transferred to East Mississippi Correctional Facility ("EMCF"). ([54-2] at 74.)  On January 6, 2014, a doctor at EMCF ordered that Plaintiff be sent for a neurological or orthopedic spine surgical evaluation. ([54-2] at 75.)  On February 3, 2014, Plaintiff underwent surgery on his spine. ([54-2] at 79-84.)

In order to succeed on his claims, Plaintiff must demonstrate that Defendants were deliberately indifferent to his serious medical needs. *See Davidson*, 91 Fed. App'x. at 964. Plaintiff has failed to make this showing.  Contrary to Plaintiff's allegations, the evidence before the Court does not demonstrate that Defendant Wiley prevented Plaintiff from receiving his medications, ignored his sick calls, prevented him from seeing a doctor, or influenced other medical professionals to deny him care.  In fact, the record demonstrates that medical

professionals treated Plaintiff soon after his injury, examined him on a regular basis, ordered radiographs, and prescribed him multiple medications on several occasions.[8]

Additionally, the record does not support Plaintiff's allegation that Dr. Burke delayed his MRI. Dr. Burke first examined Plaintiff on September 23, 2013, and by October 2, 2013, he had requested an MRI. ([54-2] at 42, 47.) However, on October 16, 2013, another doctor requested that Dr. Burke reevaluate Plaintiff before sending him for an MRI. ([54-2] at 53.) By November 16, 2013, Dr. Burke had reevaluated Plaintiff and again requested an MRI, which was approved and performed. ([54-2] at 55, 73, 92-93.) The record clearly demonstrates that Defendants were not deliberately indifferent to Plaintiff's serious medical needs. *See Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) (holding that "[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmates' allegations of deliberate indifference.").

## CONCLUSION

For the reasons stated above, the Court finds that Defendants' Motion for Summary Judgment [54] should be granted.

IT IS, THEREFORE, ORDERED that:

1. Defendants' Motion for Summary Judgment [54] is GRANTED.

2. This action is dismissed with prejudice.

3. A separate judgment in accordance with Federal Rule of Civil Procedure 58 will be filed herein.

SO ORDERED, this the 1st day of February, 2016.

---

[8] In addition to treating Plaintiff spinal issue, medical professionals treated Plaintiff's psychiatric issues, hypertension, and other ailments.

                                                               <u>s/ Michael T. Parker</u>
                                                               United States Magistrate Judge